*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0255P (6th Cir.)
File Name: 03a0255p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

EZZARD CHARLES HARRIS,
*Petitioner-Appellee,*

*v.*

No. 02-3114

HAROLD E. CARTER, Warden,
*Respondent-Appellant.*

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 00-07336—John W. Potter, District Judge.

Argued: June 19, 2003

Decided and Filed: July 29, 2003

Before: KENNEDY and COLE, Circuit Judges;
WILLIAMS, District Judge.*

———————

**COUNSEL**

**ARGUED:** Mark Joseph Zemba, OFFICE OF THE
ATTORNEY GENERAL OF OHIO, CORRECTIONS

———————

* The Honorable Glen M. Williams, United States District Judge for
the Western District of Virginia, sitting by designation.

LITIGATION, Cleveland, Ohio, for Appellant. Theresa G.
Haire, PUBLIC DEFENDER'S OFFICE, OHIO PUBLIC
DEFENDER COMMISSION, Columbus, Ohio, for Appellee.
**ON BRIEF:** Mark Joseph Zemba, OFFICE OF THE
ATTORNEY GENERAL OF OHIO, CORRECTIONS
LITIGATION, Cleveland, Ohio, for Appellant. Theresa G.
Haire, PUBLIC DEFENDER'S OFFICE, OHIO PUBLIC
DEFENDER COMMISSION, Columbus, Ohio, for Appellee.

———————

**OPINION**

———————

KENNEDY, Circuit Judge. Harold E. Carter, Warden,
appeals the district court's conditional grant of habeas relief
to Ezzard Harris. The district court granted the petition after
concluding (1) that Harris was presumptively denied his Sixth
Amendment right to effective assistance of counsel when the
state trial court failed to inquire as to whether his counsel had
a conflict of interest after being so advised by counsel, and (2)
that Harris was denied his Sixth Amendment right to effective
assistance of counsel due to defense counsel's actual conflict
of interest. For the foregoing reasons, we **AFFIRM** the
district court's decision to grant the writ.

**I.**

Ezzard Harris and Kevin Payton were charged in state court
with various offenses arising out of a drive-by shooting
incident in Fremont, Ohio. Harris and Payton were
represented by Attorney George Evans. Evans did not foresee
a conflict of interest when he undertook the joint
representation. Harris and Payton told Evans that neither
would accept a plea bargain in exchange for testimony against
the other. Evans planned a common defense for presentation
at what was expected to be a joint trial. On the day that
Harris and Payton were scheduled for trial, the state trial court
*sua sponte* ordered Payton to be tried before Harris. Payton

had been convicted, but not sentenced, when Harris' trial began.

Payton invoked his Fifth Amendment right against self-incrimination when called to testify at Harris' trial. The prosecution asked the trial court to order Payton to testify under a grant of immunity from prosecution for any additional crimes related to the drive-by shooting incident, with the exception of perjury and falsification. Immediately after the trial court granted the request, the following exchange took place between the trial judge and Evans:

> MR. EVANS:  Your Honor, may I request that Mr. Payton, due–in lieu of the fact that he's, for all intents and purposes, indigent since he's in jail, be assigned appointed counsel for the purpose of representing him during his questioning here?
> THE COURT:  The only thing he–He has immunity, so there's really no need for that.
> MR. EVANS:  Right.  I understand that, your Honor. But he cannot be given immunity from falsification. And there's no indication, you know, I mean one way or the other, so to speak, that–Let's put it this way.  We know he's given a prior statement to the police, and we know that if that prior statement was an attempt to mislead a public official in their duties that he could be subject to criminal liability for that.  And I think–I'm just–You now, I don't know if Mr. Payton is aware of that, so to speak.  And I represent him, but clearly if he's going to be given immunity I am suggesting that that would cause a problem for me to represent him right now, and Mr. Harris.
> THE COURT:  Because I've given him immunity, I don't see the problem.  Bring in the jury.

On direct examination, Payton testified that he and Harris were the only men in the van identified as being involved in the drive-by shooting and that he was the driver.  Payton also testified that he was in the van when the victims were shot but

that he was not the shooter.  Evans did not cross-examine Payton.  The jury found Harris guilty as charged.

On direct appeal, Harris claimed that "[t]he Court of Common Pleas committed reversible error when it permitted testimony of co-defendant Kevin Peyton [sic] and Mr. Harris was denied effective assistance of counsel because his trial counsel could not effectively represent him while representing Mr. Peyton [sic] at the same time."  The Ohio Court of Appeals denied the appeal. The Ohio Supreme Court denied leave to appeal.

While Harris' direct appeal was still pending before the Ohio Supreme Court, he applied to reopen that appeal under Ohio Rule of Appellate Procedure 26(B), claiming in relevant part that "Harris was denied the effective assistance of counsel when defense counsel created a conflict of interest by representing Harris and his co-defendant, knowing that the co-defendant, like Harris, had denied responsibility, but knowing also that the co-defendant might be called to testify and would implicate Harris as the shooter."  The Ohio Court of Appeals denied the application, and the Ohio Supreme Court denied leave to appeal.

On June 5, 2000, Harris filed a petition for a writ of habeas corpus claiming that "Petitioner was denied the effective assistance of counsel due to his lawyer's conflict of interest." The district court initially denied Harris' petition based on its conclusion that the petition was time barred by the one-year limitations period of 28 U.S.C. § 2244(d)(2) because a Rule 26(B) application was part of Ohio's collateral review process.  Harris filed a motion under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment, which the district court granted in light of the rule established in *Bronaugh v. Ohio*, 235 F.3d 280 (6th Cir. 2000) (holding that a Rule 26(B) application must be analyzed under § 2244(d)(1)(A) as part of Ohio's direct review process). The district court held an evidentiary hearing on the issue of whether Harris' trial counsel was ineffective as a result of an

actual conflict of interest. After the hearing, the district court granted Harris habeas relief, ordering that he be released from custody unless granted a new trial within ninety days. The State filed a timely notice of appeal.

## II.

Harris claims that he is entitled to habeas relief on the ground that his Sixth Amendment right to effective assistance of counsel was violated due to his lawyer's conflict of interest. This Court reviews *de novo* the district court's conclusions of law, including mixed questions of law and fact, and its findings of fact for clear error. *Moss v. Hofbauer*, 286 F.3d 851, 858 (6th Cir. 2002). Section 2254(d) of title 28 of the United States Code sets forth the standard for granting a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The parties do not dispute the reasonableness of the facts determined in the state court proceedings. Thus, to be entitled to relief under § 2254(d), this Court must find that the decision of the Ohio Court of Appeals was either contrary to, or an unreasonable application of, the Supreme Court's clearly established precedents. *Price v. Vincent*, 123 S.Ct. 1848, 1852-53 (2003).

A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state court decision is an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The Supreme Court has cautioned that a "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

To show a violation of the Sixth Amendment right to counsel, clearly established Supreme Court precedent requires a defendant to demonstrate (1) that his or her attorney "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) that the attorney's deficient performance was so prejudicial that it "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In the context of an alleged conflict of interest in representation, the test for a Sixth Amendment violation has been modified by clearly established Supreme Court precedent. In cases where a defendant or defense counsel makes a timely objection to joint representation based on an asserted conflict of interests and the trial court fails to inquire as to whether the conflict warrants the appointment of separate counsel, prejudice is presumed and reversal is automatic. *Holloway v. Arkansas*, 435 U.S. 475, 484-88 (1978); *see also Cuyler v. Sullivan*, 446 U.S. 335, 346 (1980) (*"Holloway* requires state trial courts to investigate timely objections to multiple representation."). The issue presented to the *Holloway* Court was whether co-defendants at trial were denied their Sixth Amendment right

to counsel when the co-defendants "made timely motions for appointment of separate counsel, based on the representations of their appointed counsel that, because of confidential information received from the codefendants, he was confronted with the risk of representing conflicting interests and could not, therefore, provide effective assistance for each client." *Id.* at 476-77.

In cases where neither the defendant nor defense counsel makes a timely objection to joint representation, prejudice is presumed only if the defendant demonstrates on appeal that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 348-350; *see also Riggs v. United States*, 209 F.3d 828, 831 n.1 (6th Cir. 2000) ("[T]his [C]ircuit applies the *Cuyler* analysis to all Sixth Amendment conflict-of-interest claims. One exception, not applicable here, is in those cases where the trial court was informed by counsel or the defendant of a potential conflict of interest but failed to inquire into that conflict: in such cases, prejudice is presumed and reversal is automatic.") (internal citation omitted). *Cuyler* generally limits a trial court's duty to initiate a conflict of interest inquiry to those cases in which the trial court either "knows or reasonably should know that a particular conflict exists." 446 U.S. at 346-47. The issues presented to the *Cuyler* Court included whether "a state trial judge must inquire into the propriety of multiple representation even though no party lodges an objection," and "whether the mere possibility of a conflict of interest warrants the conclusion that the defendant was deprived of his right to counsel." *Id.* at 345.

Before addressing the state court's adjudication of Harris' claim, we note that the district court held that Harris was entitled to habeas relief because (1) he was entitled to the presumption of prejudice and automatic reversal under *Holloway*, and (2) he was entitled to the presumption of prejudice and automatic reversal under *Cuyler* due to Evans' actual conflict of interest adversely effecting his representation of Harris. In support of its actual conflict of

interest holding, the district court found that Payton's testimony had clearly implicated Harris, that the manner in which Payton testified was damaging to Harris, and that a portion of Payton's testimony implicating Harris conflicted with the testimony of another prosecution witness. The district court noted that Evans not only failed to cross-examine Payton, he also failed to object to a number of clearly objectionable questions posed by the prosecutor. The district court credited Evans' testimony at the evidentiary hearing that he could not cross-examine Payton because he feared subjecting Payton to further prosecution, harming Harris' defense, and revealing client confidences. For the reasons discussed below, although not error, it was not necessary for the district court to find an actual conflict of interest before presuming prejudice.

On direct appeal, the Ohio Court of Appeals affirmed that a claim of ineffective assistance of counsel is governed by *Strickland*, and recited the required elements. The court proceeded to review the Supreme Court's opinions in *Holloway* and *Cuyler*. The court read *Holloway* as imposing a duty on a trial court to inquire into whether the risk of a conflict of interest unconstitutionally endangered a defendant's Sixth Amendment right to counsel when counsel represents multiple defendants at one trial. The court read *Cuyler* as imposing a duty on a trial court "to inquire into the possibility of conflicts of interest posed by multiple representation only . . . in cases where the trial judge knows or reasonably should know that a possible conflict of interests exists." The court further noted that the *Cuyler* Court had observed that "separate trials for . . . co-defendants significantly reduce[s] the potential for a divergence in their interests."

In light of this precedent, the appeals court concluded that "nothing in the circumstances of this case indicates that the trial court had a duty to inquire into whether there was a conflict of interest," noting that Payton and Harris were tried separately and that Evans' role in representing Payton was

"all but over" because Payton had been convicted when he testified at Harris' trial. We read this holding as finding that *Holloway* was inapplicable to this case because Harris and Payton were not tried jointly and that *Cuyler* did not impose a duty to inquire in this case because Harris and Payton's separate trials minimized the risk of conflict and Payton had little need for Evans' continued representation. Finally, the appeals court held that even if Harris' Sixth Amendment claim was analyzed under the *Cuyler* actual prejudice standard, his claim failed because Harris had not demonstrated, and the court itself could not see, that an actual conflict of interest had adversely effected Evans' representation of Harris.

The state appeals court opinion does not mention Evans' request for the appointment of separate counsel, nor does it discuss the role that a timely objection or motion for the appointment of separate counsel plays in the analysis of a Sixth Amendment claim based on counsel's representation of conflicting interests. Because the appeals court concluded that there was no reason for the trial court to know that a conflict of interest existed in the joint representation arrangement, we read the opinion as implicitly finding that Evans' request for separate counsel failed to sufficiently inform the trial court that the joint representation arrangement posed a conflict of interest now that Payton was required to testify. The appeals court's conclusion in this regard is contrary to the *Holloway* Court's holding regarding what constitutes a sufficient notice to the trial court. In *Holloway*, defense counsel was appointed to represent three defendants at a joint trial. Defense counsel repeatedly objected to the arrangement prior to trial to no avail. At trial, when each of the defendants decided to testify against the advice of counsel, defense counsel again raised an objection to the joint representation on the ground that confidential communications with each defendant precluded the attorney from examining one defendant while protecting the interests of the other two defendants through cross-examination or objections to the prosecuting attorney's cross-examination.

The trial court cursorily rejected the request. In assessing the sufficiency of defense counsel's objection to the joint representation arrangement, the Court dismissed the argument that defense counsel should have presented its request for the appointment of separate counsel more vigorously and in greater detail, noting that the trial court's response discouraged the continued pursuit of the request and that a more detailed presentation of the conflict of interest problem posed the risk of violating the lawyer's duty of confidentiality to his clients. *Holloway*, 435 U.S.. at 485.

We find that the grounds for Evans' request for the appointment of separate counsel should have been apparent to the state trial court. Evans raised his request twice, explaining that the appointment of separate counsel was necessary because he could not effectively protect Payton's interests during his testimony against Harris while simultaneously representing Harris' interests, given the confidential communications he had with each man. Because the objection raised by Evans mirrors that recognized by the *Holloway* Court, we find that Evans request sufficiently informed the trial court of the basis for his objection to his continued representation of Payton and Harris.

We further note that Evans' objection was timely despite the fact that Evans did not raise the conflict of interest issue until Harris' trial was underway. As observed in *Holloway*, "an 'attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interests exists or will probably develop in the course of trial,'" and "defense attorneys have an obligation, upon discovering a conflict of interests, to advise the court at once of the problem." *Id.* at 485-86. Thus, a conflict of interest objection is timely not only when it is raised before trial, but also when it is raised during the course of the trial. *Id.* at 495 n.4 (Powell, J., dissenting). This is particularly true where, as here, the conflict of interests did not arise until Payton received immunity and was compelled to testify. Because the trial court failed to investigate Evans'

timely objection, the Ohio Court of Appeals should have presumed prejudice and automatically reversed Harris' conviction. Its finding was contrary to clearly established federal law as stated in *Holloway*.

### III. Conclusion

For the foregoing reasons, we **AFFIRM** the district court's grant of Harris' petition for habeas relief on the ground that the decision of the Ohio Court of Appeals is contrary to *Holloway*. Harris was presumptively denied his Sixth Amendment right to counsel when the state trial court failed to inquire as to whether Evans had a conflict of interest after being so informed, and therefore is entitled to automatic reversal of his conviction.