NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0620n.06
Filed: August 23, 2006

No. 04-4063

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | |
|---|---|
| ALVIN CORDELL, ) | |
| ) | |
| Petitioner-Appellant, ) | |
| ) | ON APPEAL FROM THE UNITED |
| v. ) | STATES DISTRICT COURT FOR THE |
| ) | SOUTHERN DISTRICT OF OHIO |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent-Appellee. ) | |

Before: RYAN and COOK, Circuit Judges; FORESTER, Senior District Judge.[*]

COOK, Circuit Judge. Alvin Cordell appeals the district court's order denying his Motion to Vacate Sentence filed pursuant to 28 U.S.C. § 2255, in which he claimed that the court in his drug trafficking trial erroneously denied his claim of ineffective assistance of counsel. Two government witnesses were former clients of Cordell's trial counsel, and Cordell argues that the resulting conflict of interest adversely affected his counsel's cross-examination of them. Because we do not believe that the alleged conflict affected the adequacy of his representation, we affirm.

I.

---

[*]The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

A narcotics investigation resulted in the arrest of Cordell and two of his subordinates, Michael Bowens and Darrin Clack. At various points before and after the arrests, each of the three was represented by Attorney Kenneth Lawson. Lawson represented Bowens and Clack in replevin actions to recover cash and property seized by law enforcement officials in the course of the investigation. Lawson entered not-guilty pleas for Bowens and Cordell in their criminal cases. And Lawson continued to represent Cordell throughout his trial. Prior to Cordell's trial, Lawson learned that Bowens was planning to cooperate with the government and testify against Cordell, prompting Lawson immediately to terminate his representation. Also by the time of Cordell's trial, the substantive matters in Bowens's and Clack's replevin actions had already been decided.

Evidence at trial placed Cordell at the center of the alleged drug trafficking. Bowens testified that Cordell arranged drug shipments and distribution; Clack testified to delivering crack cocaine to Cordell in Cincinnati; and physical evidence (including a large amount of cash) and a recording of an incriminating conversation between Cordell and Bowens further supported Cordell's guilt. Lawson generally attacked Bowens's and Clack's credibility on cross-examination, but, as Cordell now notes, Lawson neglected to target the pair's prior, contrary testimony in the replevin actions. Cordell did not object at trial to Lawson's continuing representation.

The jury convicted Cordell of one count of conspiracy to distribute and possess with intent to distribute marijuana and cocaine and one count of attempt to distribute and possess with intent to distribute crack cocaine. The district court sentenced Cordell—who had two prior felony drug

convictions—to serve the mandatory term of life imprisonment for each count of conviction. This court affirmed, and the district court denied his 28 U.S.C. § 2255 motion after conducting an evidentiary hearing. Cordell now appeals the denial of his § 2255 motion.

II.

*Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), articulates the general standard to demonstrate the ineffective assistance of counsel. First, Cordell must show that counsel's performance was objectively unreasonable. *Id.* Second, he must show that such deficient performance resulted in prejudice that "warrant[s] setting aside the judgment . . . ." *Id.* at 691. "As a general matter, a defendant alleging a Sixth Amendment violation must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) (quoting *Strickland*, 466 U.S. at 694).

A lesser degree of prejudice need be shown by a § 2255 movant who, having failed to object previously, claims ineffective assistance on the ground that his counsel represented simultaneously conflicting interests at trial. *Id.* at 167-68. In that case, the movant "must demonstrate that 'a conflict of interest actually affected the adequacy of his representation,'" *Id.* at 168 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 348-49 (1980)), but need not show that but for the conflict the outcome of the trial would have been different. The conflict must be "real or genuine, as opposed to [] hypothetical," *Moss v. United States*, 323 F.3d 445, 467 n.23 (6th Cir. 2003), and must have adversely affected "counsel['s] . . . basic strategic decisions." *Id.* at 466 (quotations omitted). Then,

- 3 -

according to the "*Sullivan* presumption" (or "prophylaxis"), courts presume that the outcome of the litigation would have been different in the absence of the conflict.

It is however unsettled whether the *Sullivan* presumption applies in the context of "successive representation" (where a petitioner alleges ineffective assistance on the basis of his counsel's previous representation of a co-defendant or trial witness) as well in the context of simultaneous representation. *See Mickens*, 535 U.S. at 176 ("[W]e do not rule upon the need for the *Sullivan* prophylaxis in cases of successive representation. Whether *Sullivan* should be extended to such cases remains, as far as the jurisprudence of this Court is concerned, an open question."). In *Moss*, this court applied the presumption in a case where the attorney represented two parties "during the same proceedings" and regarding "identical facts," but it suggested in dicta that the presumption would not apply in the "traditional" successive representation context, where the representations were only "substantially related." 323 F.3d at 461-62. Accordingly, in a more traditional case of successive representation where the representations did not occur in the same proceeding and where the factual bases of the representations were not identical, this court refused to apply the *Sullivan* presumption. *Gillard v. Mitchell*, 445 F.3d 883, 891 (6th Cir. 2006) ("Simultaneous and successive representation differ materially because in the latter, the attorney is no longer beholden to the former client. Because the Supreme Court has not held that successive representation gives rise to a presumption of prejudice, the *Sullivan* presumption does not control this habeas case.") (citing *Mickens*, 535 U.S. at 176-78). *Gillard* would be definitive here if the court did not offer the alternative reasoning that the petitioner failed even to show that the

"successive representation adversely affected his trial [counsel's] performance." *Id.* In other words, the court held that petitioner would lose with or without the benefit of the *Sullivan* presumption.

We follow the same course here. Cordell argues that the *Sullivan* presumption should apply because Lawson's representation of him overlapped with Lawson's representations of Bowens and Clack in the replevin actions. The government contends that the presumption should not apply because the representations were successive (because the replevin actions had effectively concluded by the time of Cordell's trial) and though "[t]he state civil proceedings were not entirely unrelated to Cordell's criminal proceeding . . . , [the] replevin action[s] necessarily involved different issues and much more limited facts." We address neither of the government's arguments because we hold that Cordell cannot prevail even with the benefit of the *Sullivan* presumption.

As noted, *Sullivan* requires a petitioner to demonstrate that a conflict adversely affected his representation. *Mickens*, 535 U.S. at 168; *Sullivan*, 446 U.S. at 348. To establish a conflict of interest, Cordell must "point to specific instances in the record to suggest an . . . impairment of his interests. . . . There is no violation where the conflict is . . . merely hypothetical." *United States v. Mays*, 77 F.3d 906, 908 (6th Cir. 1996) (quotation omitted).

Cordell asserts that Lawson's prior representations conflicted with his interests at trial, yet he has not pointed in his briefs or at oral argument to specific facts that indicate a real—as opposed to a hypothetical—conflict of interest. Cordell speculates that Lawson learned confidential information from Bowens and Clack that may have aided his defense. *See Lordi v. Ishee*, 384 F.3d

189, 193 (6th Cir. 2004) ("Lordi's case before this court is based upon pure speculation that [the attorney] may have known something by implication from his law partner . . . ."). Lawson, of course, did not represent Clack or Bowens at Cordell's trial, and the civil forfeiture proceedings were effectively over before Lawson took on defending Cordell. Moreover, Cordell's failure to object at trial to Lawson's previous representations boosts our assessment that no conflict existed. He simply does not show "instances in the record" suggesting an "impairment of his interests."

Assuming for argument that a conflict did exist, we then examine whether such a conflict caused an adverse effect on counsel's basic trial strategy choices. *McFarland v. Yukins*, 356 F.3d 688, 705 (6th Cir. 2004). Typically, in a successive representation case, the "fear" is that an actual conflict will adversely affect trial counsel's performance because "the lawyer will fail to cross-examine the former client rigorously for fear of revealing or misusing confidential information." *Moss*, 323 F.3d at 460. Cordell contends that the conflict prevented Lawson from highlighting, through cross-examination, contradictions between the testimony Bowens and Clack gave in their civil replevin actions and their testimony at Cordell's trial. Specifically, Cordell notes that Bowens testified differently in the two proceedings about the source of the cash that was seized from him and that Clack gave different explanations regarding the reason for his trip to Cincinnati.

We find Cordell's argument without merit because Lawson's failure to point out those particular discrepancies cannot be shown to constitute an alteration of his "basic strategic decisions." *Moss*, 323 F.3d at 466. Lawson vigorously cross-examined both Bowens and Clack and sought to impeach their credibility. He questioned Bowens about the veracity of his prior statements made

to the grand jury and highlighted for the jury the benefits Bowens garnered from cooperating with the government. He also explored Bowens's drug trafficking history to impeach his veracity and credibility. As for Clack, Lawson led him to concede on cross-examination that he had lied under oath, and Lawson also cast doubt on Clack's credibility by inquiring about the reduced sentence Clack would receive for his testimony. *Cf. United States v. Infante*, 404 F.3d 376, 390 (5th Cir. 2005) (noting that conflicted defense counsel did not test the credibility of prosecution witnesses by questioning them about plea agreements or hopes of receiving a reduced sentence). Lawson effectively questioned these witnesses' credibility; Lawson's failure to point out their additional inconsistencies was not an error of constitutional magnitude.

Cordell also contends that Lawson's counsel was ineffective because the attorney-client privilege prevented Lawson from impeaching Bowens and Clack on the basis of the arguments they made in the prior civil actions. Such arguments, however, were in the public record, and thus not subject to privilege. Accordingly, privilege cannot validly be raised to impugn Lawson's performance.

In sum, any alleged conflict of interest did not adversely affect Lawson's performance. We find as well that Cordell has failed to demonstrate that Lawson's choice not to question Bowens and Clack about the civil actions "was not part of a legitimate strategy, judged under [a] deferential review of counsel's performance." *McFarland*, 356 F.3d at 706.

Finally, we reject Cordell's argument that the trial court had a duty to inquire about a possible conflict of interest but failed to do so. *See, e.g.*, *Holloway v. Arkansas*, 435 U.S. 475, 483-84 (1978) (reversing conviction because trial court refused to consider defense counsel's repeated requests for appointment of separate counsel in joint representation case based on conflict of interest among clients); *Harris v. Carter*, 337 F.3d 758, 763 (6th Cir. 2003) (same). Even in the more suspect contexts of multiple or joint representations, "'absent special circumstances, . . . trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflicts as may exist.'" *Moss*, 323 F.3d at 471 (quoting *Sullivan*, 446 U.S. at 347) (alteration in original). Here, the trial court had no duty to inquire about a potential conflict of interest because it neither knew nor reasonably should have known that a particular conflict existed. *Mickens*, 535 U.S. at 168-69.

III.

For the foregoing reasons, we affirm the district court's order denying Cordell's Motion for Vacation of Conviction pursuant to 28 U.S.C. § 2255.