NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0067n.06

No. 17-2495

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

GARY BALL, JR.,

      Petitioner - Appellant,

v.

UNITED STATES OF AMERICA,

      Respondent - Appellee.

)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Feb 16, 2024
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

OPINION

___

Before: BOGGS, GILMAN, and NALBANDIAN, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge**. A jury convicted Gary Ball, Jr. of six crimes arising out of his membership in the Highwaymen Outlaw Motorcycle Gang (the Gang). Ball was thereafter sentenced to 360 months in prison. He subsequently filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Ball's motion alleged various forms of prosecutorial misconduct and ineffective assistance of counsel.

The district court denied Ball's motion, but issued a certificate of appealability on two Sixth Amendment issues: (1) whether Lee O'Brien—Ball's initial counsel—had a conflict of interest due to his alleged participation in criminal activity related to Ball, and (2) whether Ball's subsequent counsel—Lawrence B. Shulman—had a conflict of interest because of his prior and concurrent representation of Ball's codefendant, Randell McDaniel.

Following the denial of his 28 U.S.C. § 2255 motion, Ball filed a motion for relief from judgment under Rule 60(b) of the Federal Rules of Civil Procedure on the basis of (1) newly

discovered evidence, and (2) fraud on the court by the government. But the district court denied the motion as untimely. The court also concluded that, even if the motion were timely, it lacked merit.

On appeal, Ball argues that the district court erred in denying his 28 U.S.C. § 2255 motion because O'Brien and Shulman had conflicts of interest that denied Ball the right to the effective assistance of counsel under the Sixth Amendment. Ball also argues that the court erred in denying his Rule 60(b) motion, and he now seeks a certificate of appealability as to that motion. For the reasons set forth below, we **AFFIRM** the judgment of the district court and **DENY** Ball's application for a certificate of appealability.

## I. BACKGROUND

During at least part of the time relevant to this case, Ball served as the President of the Eight Mile Chapter in the Detroit-based Gang, a motorcycle gang and racketeering enterprise. Ball helped lead the Gang's distribution of controlled substances and the transportation of stolen property.

In September 2006, Ball was indicted along with 16 codefendants. The indictment charged Ball with one count of conspiracy to possess controlled substances with the intent to distribute the drugs, in violation of 21 U.S.C. § 846. At Ball's initial appearance in October 2006, Attorney O'Brien represented him.

O'Brien was previously the subject of FBI reports concerning his association with Ball and the Gang. In August 2005, FBI Special Agent Edward Brzezinski reported that a source informed him that "[Ball] resides in a condominium that is owned by [O'Brien]" and that "[O'Brien] drinks a lot of alcohol and is 'hooked on' cocaine, which he gets from [Ball]." Brzezinski stated a month later that O'Brien was one of the "attorneys that represent a lot of the [Gang] members," and that

O'Brien was a "big dope addict."

In November 2007, Brzezinski and an FBI taskforce traveled to Todd Sullivan's body shop in the "Southfield area" of Michigan. Brzezinski located a retagged stolen Camaro after arriving at the body shop. According to Brzezinski, Sullivan stated that the Camaro had belonged to O'Brien, and that Sullivan had purchased it from him. Brzezinski testified that, shortly after his visit to the body shop, the following exchange occurred between him and O'Brien:

> [I] ran into Lee O'Brien at the courthouse. And the first thing he came up to me and said, "I don't own that car." I said, "I never said you did." I said, "Do you know Todd Sullivan?" [He said,] "No I don't know Todd Sullivan. I didn't know who Todd Sullivan was until two days ago." I said, "He never paid you for a car?" He said, "Well no, I sold the car, but I don't know Todd, I never met with him, never even talked to the guy, never even been in his shop."

O'Brien offered a different account of the exchange. According to O'Brien, Brzezinski demanded that another client of O'Brien's, Michael Newberry, become an informant and cooperate against Ball. Once Newberry informed O'Brien that he had no interest in cooperating, and O'Brien conveyed that information to Brzezinski, Brzezinski allegedly became "irate" and retaliated by accusing O'Brien of stealing the Camaro found in Sullivan's body shop. Brzezinski later called O'Brien and told him he had a warrant for O'Brien's arrest. This call, according to O'Brien, was intended to intimidate him into getting Ball and Newberry to cooperate with federal authorities. O'Brien maintains that this threat and his failure to bring Ball in to cooperate prevented him from entering into meaningful plea negotiations on behalf of Ball.

In March 2008, O'Brien was charged in a criminal complaint for making false statements regarding his possession of the retagged, stolen Camaro. The district court set a hearing nine days later to discuss finding Ball a new attorney. O'Brien's representation was subsequently terminated in May 2008. His termination occurred before the district court's motions deadline.

Attorney Shulman thereafter began representing Ball in June 2008, and he continued representing Ball throughout Ball's trial in mid-2010 and at Ball's sentencing in February 2011.

Three months before he appeared as Ball's counsel, Shulman began representing Gang member Randell McDaniel in a Michigan-state criminal case. McDaniel was charged with conducting a criminal enterprise, and with multiple counts of removing or defacing a serial number on a motor vehicle with the intent to mislead, among other charges. At the time, McDaniel was not charged in the present federal case. Shulman represented McDaniel in the state case throughout the trial and on appeal until January 2011, although the briefing in the appeal was completed by October 2009.

In January 2009, McDaniel was indicted in a separate federal case in the Eastern District of Michigan for conspiracy to possess drugs with the intent to distribute them and for their actual distribution. Shulman entered his appearance on behalf of McDaniel in March 2009.

A superseding indictment was unsealed in this case in May 2009. The superseding indictment included 74 defendants, and it charged Ball with the following crimes: conducting or participating in a racketeering enterprise, in violation of 18 U.S.C. §§ 1962(c) and 1963(a); conspiracy to participate in a racketeering enterprise, in violation of 18 U.S.C. §§ 1962(d) and 1963(a); conspiracy to commit murder in aid of racketeering, in violation of Michigan Compiled Laws §§ 750.316(1) and 750.157a(a) and 18 U.S.C. § 1959(a)(5); conspiracy to transport stolen property in interstate commerce, in violation of 18 U.S.C. § 2312; conspiracy to possess a controlled substance with the intent to distribute the drugs, as well as the distribution of a controlled substance, both in violation of 21 U.S.C. § 841(a)(1); and conspiracy to possess cocaine with the intent to distribute the drug, as well as its actual distribution, both in violation of 21 U.S.C. § 846. Neither McDaniel nor O'Brien were charged in this indictment.

The grand jury returned a second (and final) superseding indictment in December 2009. In that indictment, Ball was charged with an additional count: a conspiracy to alter, remove, or obliterate a vehicle identification, in violation of 18 U.S.C. § 511. This final indictment also charged O'Brien with knowingly making false statements in connection with his conversation about the stolen Camaro, in violation of 18 U.S.C. § 1001(a). In addition, McDaniel was charged with one count of a conspiracy to transport stolen property in interstate commerce, in violation of 18 U.S.C. § 2312. But once McDaniel was charged in this indictment, Shulman recognized that he could not represent both Ball and McDaniel as codefendants. Shulman thereafter informed McDaniel that McDaniel would need to find a new lawyer. The district court subsequently appointed Attorney Ronnie Cromer to represent McDaniel.

After the close of its evidence, the government dismissed the conspiracy-to-commit-murder charge against Ball because the government lacked sufficient evidence to prove the charge. But Ball was convicted on the six remaining counts against him. He was subsequently sentenced to 360 months of imprisonment.

In September 2013, a panel of this court affirmed Ball's convictions and sentence. *See United States v. Nagi*, 541 F. App'x 556 (6th Cir. 2013). Ball later filed a motion to vacate his convictions and sentence under 28 U.S.C. § 2255. He raised various claims of prosecutorial misconduct and ineffective assistance of counsel. Significant to this appeal, Ball argued that O'Brien's knowledge that O'Brien was the subject of a criminal investigation precluded O'Brien from pursuing a favorable plea agreement. Ball also contended that Shulman's alleged conflict—stemming from his representation of McDaniel in the Michigan-state prosecution—prevented Shulman from raising certain defenses, making objections, and entering meaningful plea negotiations on behalf of Ball. The district court held an evidentiary hearing in

August 2017, at which the government called Shulman and Michigan State Police Detective Jeff Hart to testify. Ball's attorney cross-examined Shulman and Hart extensively.

The district court denied Ball's § 2255 motion in September 2017. As relevant here, the court found that Ball had not shown an actual conflict of interest warranting a presumption of prejudice because Ball failed to show that a division of loyalties affected either O'Brien's or Shulman's representation of him. Regarding O'Brien, the court concluded that his failure to facilitate a plea on Ball's behalf resulted not from a strategic or personal choice, but from the government's lack of interest in negotiating a plea deal. And the court found that Ball failed to show that Shulman's representation of McDaniel affected Shulman's decision to pursue plea negotiations or possible defenses.

The district court also rejected Ball's claims under *Strickland v. Washington*, 466 U.S. 668 (1984), as to any alleged deficient performance by O'Brien or Shulman. Finally, the court issued a certificate of appealability limited only to Ball's claims that the alleged conflicts of interests by O'Brien and Shulman rendered their representation ineffective under the Sixth Amendment.

Ball filed the present appeal in December 2017 after receiving an extension of time from the district court. But two years later, in September 2019, Ball filed a motion in the district court for relief from judgment under Rule 60(b) of the Federal Rules of Civil Procedure. Ball's basis for his Rule 60(b) motion was that newly discovered evidence undermined the testimony of Shulman and Hart in connection with the August 2017 evidentiary hearing, as well as representations by Assistant United States Attorney Christopher Graveline. He further argued that the testimony constituted fraud on the court. Ball also filed a motion to hold this appeal in abeyance until the district court resolved his Rule 60(b) motion, which this court granted.

The district court ultimately denied Ball's Rule 60(b) motion because it was untimely. Alternatively, the court concluded that even if the motion had been timely, it lacked merit. Ball did not apply for a certificate of appealability concerning the denial of his Rule 60(b) motion. He has nonetheless filed an amended notice of appeal to seek review of the district court's Rule 60(b) decision.

## II. ANALYSIS

### A. Standard of review

"A prisoner in custody under sentence of a [federal] court . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). We review de novo the legal conclusions of a district court's denial of a § 2255 motion, but examine the court's factual findings under the clear-error standard. *Gabrion v. United States*, 43 F.4th 569, 577 (6th Cir. 2022). And a district court's denial of a Rule 60(b) motion for relief from judgment is reviewed under the abuse-of-discretion standard. *In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 623 (6th Cir. 2008).

### B. The district court did not err in denying Ball's 28 U.S.C. § 2255 motion

To prevail on an ineffective-assistance-of-counsel claim, a petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the [petitioner's] defense." *Strickland*, 466 U.S. at 687. But in certain circumstances, ineffective-assistance-of-counsel claims predicated on alleged conflicts of interest warrant a modified analysis.

In *Cuyler v. Sullivan*, 446 U.S. 335 (1980), the Supreme Court explained that "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not

demonstrate prejudice in order to obtain relief." *Id.* at 349–50. The Court, however, cautioned that "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Id.* at 350. Also required in this analysis is a showing from the petitioner that the "actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348.

This court has since elaborated on two common conflict-of-interest scenarios. One scenario is known as a successive-representation case, which "occurs where defense counsel has previously represented a co-defendant or trial witness." *Moss v. United States*, 323 F.3d 445, 459 (6th Cir. 2003). The other common conflict-of-interest circumstance is a multiple-concurrent-representation case, which occurs in "the simultaneous representation of two or more codefendants by [a] single attorney." *Id.* at 455 n.15.

As this court has explained in *Stewart v. Wolfenbarger*, 468 F.3d 338 (6th Cir. 2006), "for [28 U.S.C.] § 2254 cases, the *Sullivan* standard does not apply to claims of conflict of interest other than multiple concurrent representation; in such cases, including successive representation, the *Strickland* standard applies." *Id.* at 351. In concluding that application of the *Sullivan* standard in successive-representation cases was not appropriate in § 2254 cases, this court observed that "[§ 2255] cases differ from § 2254 cases because a federal court is not constrained by the use of only 'clearly established Federal law, as determined by the Supreme Court . . . .' Thus a federal court has more leeway in § 2255 cases." *Id.* (citation omitted). Given the "leeway" present in § 2255 motions but absent in § 2254 petitions, there remains an open question about what standard applies to run-of-the-mill § 2255 motions alleging conflicts of interest that are not based on multiple concurrent representations. That question need not be answered, however, because Ball's motion would fail under either *Sullivan* or *Strickland* for the reasons discussed below.

#### 1. *O'Brien did not labor under an actual conflict that adversely affected his representation of Ball*

Ball argues that the district court erred in denying relief under 28 U.S.C. § 2255 because O'Brien "suffered under [an] extraordinary conflict[]." The alleged conflict arose from O'Brien's knowledge that he was the subject of a criminal investigation by the same authority that was prosecuting Ball. This knowledge, according to Ball, established an actual conflict that resulted in a "clear adverse effect." Ball alleges two adverse effects: (1) O'Brien's failure to pursue plea negotiations on Ball's behalf, and (2) O'Brien's alleged failure to investigate certain evidence and to raise certain pretrial defenses.

We find these arguments unpersuasive. They fail under both *Strickland* and *Sullivan* because Ball does not show how O'Brien's knowledge of being investigated affected his representation of Ball. *See United States v. Giorgio*, 802 F.3d 845, 849 (6th Cir. 2015) ("[A] potential conflict remains just that until it *actually* impairs the defendant's interests.") (emphasis in original). True enough, "a conflict of interest may arise where defense counsel is subject to a criminal investigation." *See Moss*, 323 F.3d at 472. But to demonstrate something more than a potential conflict, Ball needs to show that the government would have been willing to engage in plea negotiations but for the alleged conflict. *See id.* at 465 ("At a minimum, *Holloway* [*v. Arkansas*, 435 U.S. 475 (1978)] requires a defendant alleging that his attorney's conflict of interest prevented the exploration of plea negotiations to demonstrate that the government was willing to extend, or consider, an invitation to commence plea negotiations.").

Ball has not done so. As the district court explained, during the period that O'Brien was allegedly conflicted, the government was preparing superseding indictments that added six new counts against Ball. And in September 2008, one of the Assistant U.S. Attorneys handling Ball's prosecution stated in a pretrial conference: "I've been pretty open with everybody from the

beginning that this was going to be a superseding indictment, more than likely it was going to be a RICO indictment." The government therefore explained to the district court that the notion of a plea resolution for Ball at that point was "nothing but fiction."

Ball, however, provided an affidavit from O'Brien alleging that Agent Brzezinski stated that the government would be willing to make a deal for Ball with a sentence in the five-year range. But the district court discounted this claim because O'Brien did not specify when such a statement was made. The court consequently found that O'Brien's failure to facilitate a guilty plea was because plea negotiations were not a realistic option, not because O'Brien chose to forgo them. And that conclusion was not clearly erroneous. *See Moss*, 323 F.3d at 457 ("[T]his Court will not disturb the district court's factual findings, particularly determinations regarding witness credibility, absent clear error."). Even taking the affidavit at face value, the offer came from FBI Agent Brzezinski, not a United States Attorney with the authority to negotiate a plea deal. And the affidavit describes the plea offer as contingent on Ball's cooperation. O'Brien claims that another client (Newberry) refused to cooperate, but he does not explain Ball's failure to cooperate.

Ball also argues that O'Brien's alleged conflict prevented him from investigating possible defenses. He specifically claims that O'Brien's conflict precluded him from proving that Ball was not involved in cocaine sales or in the theft, transport, and retagging of certain vehicles. Ball speculates that these failures "may have been an attempt to curry favor with the government." The district court rejected these arguments because Ball failed to cite anything in the record supporting them. On appeal, Ball again fails to cite anything to support these arguments. We too reject these arguments due to the lack of evidence. *See Palatka v. Savage Arms, Inc.*, 535 F. App'x 448, 460 (6th Cir. 2013) ("Lacking appropriate citations to the record, the court has no grounds for determining whether the Plaintiffs' arguments have any evidentiary basis."). We likewise

reject the claim that Ball "was adversely affected with respect to all pre-trial investigation, motions and other pre-trial matters."

In sum, Ball has failed to show that O'Brien had an actual conflict of interest that adversely affected his representation of Ball. Accordingly, the district court did not err in denying Ball's § 2255 motion on this basis.

### 2. *Shulman did not labor under an actual conflict that adversely affected his representation of Ball*

Ball next argues that Shulman's representation of McDaniel in (1) a Michigan-state prosecution, and (2) another federal prosecution, produced a conflict of interest that forced Shulman to conceal critical information from Ball, forego the pursuit of certain defenses, and neglect plea-deal discussions. The district court assumed, without deciding, that *Sullivan* applied, even though the court found that a reasonable juror could find that Shulman's representation of McDaniel and Ball was successive.

We need not decide whether the fact pattern resembles a case of multiple concurrent representation or successive representation "because the ultimate outcome of our analysis would be the same irrespective of how we characterized the representation." *See Jalowiec v. Bradshaw*, 657 F.3d 293, 317 (6th Cir. 2011). Even under the more favorable *Sullivan* standard, "*Strickland* prejudice is presumed where counsel was burdened by an actual conflict of interest, but 'only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance.'" *Id.* (quoting *Strickland*, 466 U.S. at 692 (internal quotation marks omitted)).

To meet this standard, Ball "must point to specific instances in the record that suggest an actual conflict or impairment of [their] interests." *See Moss*, 323 F.3d at 463 (alteration in original) (quoting *Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir. 1987)). Furthermore, Ball "must make a

factual showing of inconsistent interests and demonstrate that [his] attorney made a choice between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." *Id.* Evidence of disloyalty under *Sullivan* can therefore be found "where counsel fails to pursue a strong and obvious defense, when pursuit of that defense would have inculpated counsel's other client, and where there is no countervailing benefit to the defendant from foregoing that defense or other explanation for counsel's conduct." *McFarland v. Yukins*, 356 F.3d 688, 707 (6th Cir. 2004). As we explain below, Ball has not provided any evidence of disloyalty that demonstrates an actual conflict between himself and Shulman.

### i. *Shulman's alleged withholding of incriminating evidence against McDaniel*

Ball argues that Shulman purposefully withheld evidence that McDaniel was responsible for conduct attributed to Ball at trial. He specifically maintains that McDaniel, not Ball, was responsible for crimes that Ball was charged with, including the stealing of motorcycles. Ball argues that Shulman should have used that evidence at trial.

This court, however, "has been quite rigorous in demanding more than omission of a hypothetical or 'potential' defense to establish adverse effect." *McFarland*, 356 F.3d at 706 (quoting *O'Guin v. Foltz,* 715 F.2d 397, 400 (6th Cir.1983) (emphasis omitted)). And pointing the finger at McDaniel would have likely failed as a strategy. Two witnesses testified that Ball, not McDaniel, was involved in transporting stolen motorcycles from Myrtle Beach in a U-Haul truck. Vast amounts of evidence also suggested that Ball conspired to sell drugs. The record further suggests that McDaniel was involved only with selling clean motorcycle titles. In light of this evidence against Ball, Shulman's strategy was to discredit the government's witnesses and minimize Ball's involvement in the criminal enterprise. Consistent with this legitimate strategy, Shulman vigorously cross-examined the government's key witnesses against Ball. *See Cordell*

*v. United* States, 193 F. App'x 479, 482–83 (6th Cir. 2006) (noting that vigorous cross-examination of opposing witnesses was evidence of a legitimate strategy when counsel impeached adverse witnesses' credibility and attacked the veracity of their statements).

Shulman also attacked those same witnesses in his closing argument and pointed out that one witness never saw Ball with a stolen motorcycle. And Shulman asked the court to instruct the jury that it was Ball's defense theory that the government's witnesses were unreliable. Shulman's decision to omit details about McDaniel's involvement and the conspiracy's sophistication might have been part of his legitimate trial strategy of distancing Ball's involvement in the conspiracy. We therefore reject Ball's argument on this issue.

### ii. *Shulman's alleged failure to investigate the transportation of stolen motorcycles*

Ball similarly argues that Shulman's conflict prevented him from investigating McDaniel's role in transporting stolen motorcycles from South Carolina to Michigan. Specifically, Ball contends that Shulman should have confronted Agent Brzezinski with Brzezinski's own grand-jury testimony that ostensibly proved that McDaniel, not Ball, transported these stolen motorcycles. But as the district court found, Brzezinski never testified that McDaniel helped steal the motorcycles, or that Ball did not play a role in these thefts. Confronting Brzezinski with his testimony would therefore not have contradicted the evidence implicating Ball in stealing the motorcycles. As a result, Shulman's decision to forgo this strategy has an "adequate explanation" and does not establish a failure to pursue a "strong and obvious defense." *See McFarland*, 356 F.3d at 707.

### iii. McDaniel's alleged cooperation against Ball in state court and Shulman's conflicting loyalty from representing McDaniel in federal court

Ball further maintains that Shulman was conflicted because "McDaniel serv[ed] as a source of information against" Ball in McDaniel's state prosecution and in the other federal prosecution. Critically, however, Ball provides no evidence of McDaniel cooperating against Ball. Despite notes of an interview with Ball in the other federal case that mention "motorcycles?" at one point, the record is unclear whether McDaniel was talking about the same motorcycles and the same trafficking scheme that involved Ball. There is also no proof that McDaniel implicated Ball specifically.

Ball further argues that Shulman labored under a conflict of interest because Shulman surreptitiously represented McDaniel in the present case while representing McDaniel in another federal criminal case. Pointing to the plea agreement in the other federal case that caused McDaniel's charge in this case to be dismissed, Ball claims that Shulman had a conflict of interest. Shulman, however, unequivocally denied that he secretly represented McDaniel in the present case. And the district court credited Shulman's testimony. The district court's decision to do so was not clearly erroneous given that Ball provided no evidence that McDaniel's plea agreement was the result of any cooperation with the government against Ball. *See Moss v. United States*, 323 F.3d 445, 457 (6th Cir. 2003) ("[T]his Court will not disturb the district court's factual findings, particularly determinations regarding witness credibility, absent clear error.").

### iv. Shulman's alleged failure to cross-examine and contact witnesses

Ball also claims that there was a conflict in Shulman's refusal to cross-examine or contact certain witnesses. For instance, Ball states that Shulman's representation of McDaniel prevented Shulman from cross-examining Brzezinski, or from Shulman taking other steps to establish that

Ball was not mentioned in certain government reports about "Great Lakes Choppers." But Shulman did cross-examine Brzezinski. We therefore agree with the district court that Shulman's decision not to examine Brzezinski about the reports was consistent with a reasonable and legitimate trial strategy in light of the incriminating evidence against Ball. Ball himself provided two FBI reports that implicated him, and the silence of other specific reports would not be affirmative proof of his innocence. Shulman might reasonably have hesitated to introduce evidence that showed significant motorcycle theft but did not exculpate Ball entirely.

Ball further asserts that Shulman's conflicts precluded Shulman from eliciting testimony from Jose Valle. According to Ball, Valle received a stolen motorcycle from McDaniel and would have testified to that effect. But as the district court found, Valle's testimony would not have aided Ball because McDaniel's sale of a single stolen motorcycle unrelated to Ball would not have disproved the conduct charged to Ball. Specifically, evidence of Ball's participation in the transportation of stolen motorcycles would not have been contradicted by McDaniel's sale of a single stolen motorcycle. Shulman therefore did not abandon "a strong and obvious defense," but only a "hypothetical" defense. *See McFarland*, 356 F.3d at 706–07. Similarly, Ball argues that Shulman should have cross-examined witnesses Ricky Frank and Neal Wisner about damage to Ball's motorcycle, but does not explain how that testimony would have proved Ball's innocence.

Ball also contends that Shulman's refusal to contact Eugene Trumph is evidence of another adverse effect. Trumph, according to Ball, would have testified that Ball had nothing to do with the stolen-motorcycle scheme. But Trumph was a codefendant who agreed to plead guilty in August 2010, about two months after Ball's trial. Shulman could have reasonably thought that Trumph would refuse to take the stand and incriminate himself in order to clear Ball. Shulman's decision was consistent with a reasonable investigation strategy.

Ball further argues that Shulman's failure to challenge the testimony of Robert Burton—who implicated Ball in the stolen-motorcycle conspiracy—is evidence of an adverse effect. According to Ball, Burton's testimony was "a complete fabrication, manufactured out of whole cloth." Ball argues that Shulman never challenged this allegedly fabricated testimony. But as the district court found, Ball's allegation is factually incorrect. Shulman repeatedly impeached Burton's credibility during cross-examination and in closing argument. The impeachment included, among other things, that Burton had a motive to lie, was a drug dealer, assaulted people, and cheated on his taxes. Ball argues that Shulman should have moved to exclude specific testimony by Burton, but he provides no authority showing that such a motion would have succeeded. We therefore agree with the district court that there was no adverse effect given that Ball's allegations have no basis in the record.

### v. *Shulman's conduct in plea negotiations and at sentencing*

Ball also makes passing reference to Shulman's inability to pursue plea negotiations on his behalf due to Shulman's alleged conflict. But Ball does not develop this claim in his briefing. And in the absence of such development, Ball has failed to show that the government was willing to engage in plea negotiations. *See Moss*, 323 F.3d at 465 (holding that Supreme Court precedent "requires a defendant alleging that his attorney's conflict of interest prevented the exploration of plea negotiations to demonstrate that the government was willing to extend, or consider, an invitation to commence plea negotiations").

Finally, Ball finds fault with Shulman's representation at Ball's sentencing hearing. Ball argues that Shulman should have disputed the government's loss calculation by arguing that Ball was not involved with stealing certain motorcycles. But Shulman did object to the loss amount, even though the district court assured him that it was irrelevant to the Sentencing Guidelines.

Nor was Ball forced to pay restitution for the stolen motorcycles. So, Ball fails to show that a conflict of interest affected his sentencing.

Ball thus fails to show that Shulman had an actual conflict of interest that adversely affected his representation of Ball. Accordingly, the district court did not err in denying his 28 U.S.C. § 2255 motion on this basis.

### C. The district court did not err in denying Ball's Rule 60(b) motion

We finally turn to Ball's argument concerning the denial of his motion under Rule 60(b) of the Federal Rules of Civil Procedure. Ball's motion relied on subsections (2), (3), and (6) of Rule 60(b). In his motion before the district court, Ball argued that newly discovered evidence demonstrated a close connection between McDaniel's state prosecution and the federal investigation of the Gang. Ball maintains that this evidence proves that Officer Hart's testimony to the contrary in the August 2017 evidentiary hearing was false. And according to Ball, the district court erred by crediting this false testimony from Shulman and Hart. Ball also accused Hart of committing "a fraud on the court" in light of the newly discovered evidence.

The district court denied the motion because it was untimely and, even if it were timely, the court would have denied the motion on the merits. Ball argues that the district court erred because the court did not take into account that he was "kept away" from his designated prison facility, where necessary legal materials were located, for over two years.

We construe Ball's timely notice of appeal as an application for a certificate of appealability. *See* Fed. R. App. 22(b)(2) ("If no express request for a certificate is filed, the notice of appeal constitutes a request addressed to the judges of the court of appeals."); *see also Rose v. United States*, No. 20-3122, 2020 WL 9602405, at *1 (6th Cir. Dec. 7, 2020) (construing a notice of appeal of a Rule 60(b) denial in a § 2255 action as an application for a certificate of

appealability). A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The "petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

A motion under Rule 60(b) must be made "within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). The district court correctly found that, to the extent that Ball's motion relied on Rule 60(b)(2) or (3), it was time-barred under the one-year limitation for such motions. Ball filed his Rule 60(b) motion in September 2019, two years after the district court had denied his § 2255 motion in September 2017. We therefore conclude that reasonable jurists would all agree with the district court's decision to deny Ball's motion to the extent that it relied on subsections (2) and (3) of Rule 60(b) because of the one-year limitation provided in Rule 60(c)(1). *See Miller-El*, 537 U.S. at 327.

Ball's motion also relied on subsection (6) of Rule 60(b). A motion brought under subsection (6) of Rule 60(b) must "attack[], not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005). In addition, the movant must "show 'extraordinary circumstances' justifying the reopening of a final judgment." *Id.* at 535.

The district court denied Ball's motion to the extent that it relied on Rule 60(b)(6) because the motion was not made within a reasonable time, and because Ball did not provide a reason for the two-year delay in filing the motion. Moreover, the court found the delay unreasonable because

the documents that Ball relied on could have been requested several years before he filed his Rule 60(b) motion.

We agree. Ball's motion in the district court did not provide a reason for the delay, which a Rule 60(b) motion must do. *See Tyler v. Anderson,* 749 F.3d 499, 510 (6th Cir. 2014) (holding that, in Rule 60(b) motions, the "moving party must articulate a reasonable basis for delay"). Ball, however, argues that Rule 60(b) relief is justified because he was kept away from his legal materials for two years.

But we need not consider Ball's late-found argument, which was raised in his stricken reply brief below. *See Mich. Bell Tel. Co. v. Strand*, 305 F.3d 580, 590 (6th Cir. 2002) ("This court does not ordinarily address new arguments raised for the first time on appeal."). And even assuming that we did consider the argument, we would find it unpersuasive because Ball's retained counsel had been representing Ball in connection with the § 2255 motion for over four years before he filed his Rule 60(b) motion. Despite this long period of representation, during which Ball's counsel could access legal materials and request relevant documents, his counsel did not file the motion until two years after the district court denied Ball's § 2255 motion. We therefore conclude that all reasonable jurists would agree with the district court's decision to deny Ball's motion to the extent that it relied on Rule 60(b)(6). *See Miller-El*, 537 U.S. at 327. Accordingly, Ball's application for a certificate of appealability is denied.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court and **DENY** Ball's application for a certificate of appealability.